ELECTRONICALLY FILED
2020 Jun 03 12:35 PM
CLERK OF COURT

IN THE CIRCUIT COURT OF SHELBY COUNTY TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

---

JESSICA CLIPPINGER, on behalf of
herself and all others similarly situated,

    Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

    Defendant.

No.: CT-1844-20
Division: VIII

JURY DEMANDED

---

### AMENDED CLASS ACTION COMPLAINT

---

Plaintiff Jessica Clippinger ("Plaintiff"), brings this class action on behalf of herself and all others similarly situated, by and through undersigned counsel, and for her Complaint against State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") states and alleges as follows:

### INTRODUCTION

1.     This is a class action whereby Plaintiff seeks, for herself and all other similarly situated insured customers or former customers of State Farm, declaratory and injunctive relief, as well as compensatory damages and other appropriate remedies, resulting from State Farm's common policy and general business practice of using arbitrary and unexplained adjustments to improperly reduce insureds' total loss valuations and claims payments in violation of its contractual obligations and Tennessee law.

2.     When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as State Farm, to undervalue and underpay the claims by manipulating the data used to value the vehicles. Specifically, under its insurance policies'

**Exhibit A**

terms, State Farm has a contractual duty to pay the actual cash value of a loss vehicle when adjusting total loss claims. This contractual obligation is consistent with applicable Tennessee law, which provides that State Farm must make any deductions from the actual cash value as specific as reasonably possible, and specific and appropriate with regards to the dollar amount when adjusting first-party automobile total loss claims.

3. Notwithstanding its contractual obligations, State Farm systemically fails to pay its insureds the actual cash value of their total loss vehicles by taking improper and unreasonable adjustments that are not fully explained in order to artificially decrease its insureds' recovery.

4. State Farm applied an adjustment for a typical negotiation ("Typical Negotiation Adjustment"), resulting in, on average, an 8.5% downward adjustment to each of the base values of the comparable vehicles, which were then used to derive the value of Plaintiff's total loss vehicle. This 8.5% reduction is wholly arbitrary and not based on any statistical, objective, or verifiable data. The adjustment was applied on each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The deduction is not as specific as reasonable possible or appropriate as to dollar amount, and no explanation is provided as to the evidentiary basis for the 8.5% reduction. The only purported explanation for the downward adjustments in Plaintiff's multi-page valuation report is a general, nondescript statement buried deep in the document (*see* Exhibit 1 at pp. 8 and 9), providing the reduction is "to account for typical negotiation."

5. Moreover, pursuant to its contracts of insurance, State Farm must consider a vehicle's fair market value when settling a total loss claim for actual cash value. The

Typical Negotiation Adjustment, however, is not based in fact, as it is contrary to the used car industry's market pricing and inventory management. Automobile dealers' internet list prices are priced to market, in part to reflect the intense competition in the context of internet pricing and comparison shopping. Thus, it would be atypical for an insured engaged in a so-called "typical negotiation" to be able to secure a reduction of the online list price—much less an 8.5% reduction. In short, the Typical Negotiation Adjustments are statistically invalid adjustments premised on unknown, unexplained, and factually erroneous assumptions to deliberately undervalue policyholders' total loss claims and understate the fair market value of total loss vehicles.

6. This pattern and practice of undervaluing comparable and total loss vehicles when paying first-party automobile total loss claims, which benefits the insurer at the expense of the insured, is not permitted under the terms of State Farm's policies with its insureds, nor under Tennessee law applicable to insurance contracts.

## JURISDICTION AND VENUE

7. Plaintiff and all proposed class members are citizens of the State of Tennessee. State Farm is an insurance company authorized to do business in the State of Tennessee, and, at all relevant times hereto, was engaged in the marketing, sale, and issuance of automobile insurance policies in the State of Tennessee.

8. The compensatory damages being sought by Plaintiff do not exceed $75,000, and no individual member of the Class would possess a compensatory damage claim in excess of $75,000. Additionally, the aggregate compensatory damages (in the amount of Typical Negotiation Adjustments wrongfully deducted without itemization or

explanation), claimed by Plaintiff and the Class are below the $5,000,000 federal jurisdictional threshold under the Class Action Fairness Act ("CAFA").

9. Accordingly, this Court has jurisdiction over the parties pursuant to Tenn. Code Ann. § 16-10-113, as the policies at issue were issued in this state.

10. Venue is proper pursuant to Tenn. Code Ann. § 20-4-101(a).

## PARTIES

11. Plaintiff Jessica Clippinger resides in Shelby County and is a citizen of the state of Tennessee. At all relevant times hereto, Plaintiff was contracted with State Farm for automobile insurance. On or about May 10, 2019, Plaintiff's insured vehicle was deemed a total loss.

12. Defendant State Farm is an automobile insurance company that owns numerous offices throughout the United States, including the state of Tennessee. Defendant State Farm's corporate headquarters are located at One State Farm Plaza, Bloomington, IL 61710. Defendant State Farm conducts business in Tennessee through insurance agents and other company personnel.

## FACTUAL ALLEGATIONS

**A.  State Farm's Improper Valuation of Total Loss Claims.**

13. State Farm sells automobile insurance that provides coverage for property damage done to a vehicle, whether by collision, theft, or other perils.

14. Plaintiff, like all proposed class members, currently has, had, or was covered under a contract of automobile insurance with State Farm. The contract of insurance between Plaintiff, as well as each proposed class member, and State Farm provides coverage for the total loss of a vehicle on the basis of actual cash value or

4

replacement with another of like kind and quality. The determination of a loss vehicle's actual cash value includes consideration of the vehicle's fair market value. The material policy language for all State Farm policies during the relevant time period is identical or substantially the same.

15. State Farm systematically bases its valuations and payments on total loss claims on manipulated data and reports that do not meet State Farm's duties under its insurance contracts, imposing unreasonable, inappropriate, and unspecific Typical Negotiation Adjustments to artificially reduce the values of comparable vehicles. Moreover, these deductions have no basis in fact and significantly understate the actual cash value of insureds' total loss vehicles.

16. Upon information and belief, to calculate its valuations and claims payments, State Farm obtains a market valuation report from a third-party company called Audatex. Audatex uses a software program called "Autosource Market-Driven Valuation" ("AMDV") to calculate the value of a total loss vehicle. The AMDV software was designed for use by insurance companies and is not an objective industry source used to determine the actual retail cost of used cars.

17. The AMDV software program purports to contain values for comparable vehicles recently sold or for sale in the geographic area of the insured. The valuation reports generated by the AMDV software program also purport to contain values for the loss vehicle based upon the data for the comparable vehicles in the report. Upon information and belief, State Farm instructs Audatex as to what specific data to include in the report as the basis for the valuation, including whether to apply a Typical Negotiation Adjustment to the comparable vehicles.

18. The AMDV report starts with itemized internet sales prices for specified comparable vehicles acquired from various dealers. However, rather than utilizing this actual price data, the AMDV report instead applies a downward adjustment "to account for typical negotiation." Thus, State Farm is not providing its insureds with the actual cash value or actual cost of the comparable vehicles based upon actual data acquired by State Farm or Audatex. Instead, rather than using the actual data obtained, State Farm wrongly applies a significant deduction based on an invalid and unexplained assumption that the insured can negotiate a lower price. In short, rather than paying actual cash value, State Farm pays less than actual cash value; leaving it to the insureds to make up the difference by engaging in what State Farm describes as a "typical negotiation" and achieving a better deal.

19. State Farm provides no data or explanation of industry practices in its valuation reports to support *any* Typical Negotiation Adjustment, much less one at 8.5%. The only stated reason given for its 8.5% downward adjustment to the list prices of the comparable vehicles is: "The selling price *may* be substantially less than the asking price. When indicated, the asking price has been adjusted to account for typical negotiation according to each comparables [sic] price." Ex. 1 at p. 8. However, an 8.5% reduction on a used vehicle's internet price is not typical and does not reflect market realities.

20. Most fundamentally, this assumption is contrary to customary automobile dealer practices and inventory management where list prices are priced to market, in part to reflect the intense competition in the context of internet pricing and comparison shopping. An 8.5% reduction would be atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment

6

purportedly premised on a "typical negotiation" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle need to procure a replacement and have limited time to search out the atypical opportunity to obtain the below-market deal Defendant presumes to always exist without explanation or discernable, specified or itemized support.

21. Moreover, State Farm provides no explanation as to how it arrived at the amount to be deducted. Instead, State Farm provides an arbitrary deduction, that is not adequately specified nor explained and, as such, cannot be verified. State Farm does not explain whether there is *any* reference source or data that was used in making its assumption much less specify and itemize such data (if it exists).

22. Furthermore, State Farm unreasonably buries its Typical Negotiation Adjustment at the back of the valuation report in an effort to obscure this deduction. For example, the report begins with a "Valuation Detail" section that purports to display the price of each comparable vehicle and then to itemize all "adjustments." Ex. 1 at pp. 4-6. Although this section displays any adjustments for mileage, options and equipment, it does not disclose the Typical Negotiation Adjustments. Instead, the displayed "Price" is not the actual price data collected by State Farm and Audatex, but rather, it is that price *after* the application of the downward Typical Negotiation Adjustment. In addition, the "Market Overview" section explains the mileage, options and equipment adjustments but makes no mention of the Typical Negotiation Adjustments. *Id.* at pp. 7-8. Rather, the Typical Negotiation Adjustments are hidden at the back of the report in paragraphs detailing the packages and options of the comparable vehicles in a section titled "Comparable Vehicle Details." *Id.* at 8-9. However, even this section displays a bolded price at the top for each

comparable vehicle, only explaining in non-bolded typeface at the bottom that the bolded price is not the actual price data for the vehicle.

23. Along with hiding this adjustment at the back of the valuation report, State Farm fails to specify the dollar amount of the deduction and fails to fully explain this deduction to insureds. Rather, the insured has to perform a calculation to ascertain the specific dollar amount and/or percentage that was deducted and is left to guess as to what this number was derived from and/or based upon.

24. For Plaintiff, the valuation report used a "Typical Negotiation Adjustment" to reduce the value of each comparable vehicle by, on average, 8.5%. Consequently, this improperly reduced Plaintiff's recovery under her policy by approximately 8.5%. These reductions bear no relation to the actual fair market value of the comparable vehicles or the loss vehicle. The price of each comparable vehicle used in the Audatex Report was pulled from a dealer internet listing and, therefore, was priced to market. Exhibit 1 at pp. 8-9. The application of these arbitrary, nonitemized, and unexplained Typical Negotiation Adjustments to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured. State Farm's actions and improper valuations violate its contractual obligations and Tennessee law applicable to insurance settlement practices.

**B.   State Farm Undervalued and Underpaid Plaintiff's Total Loss Claim.**

25. Plaintiff owned a 2017 Dodge Grand Caravan SXT 2WD 4 door passenger van that was deemed a total loss on or around May 10, 2019.

26. Plaintiff made a claim with State Farm for the total loss of her vehicle.

27. State Farm provided a total loss valuation to Plaintiff for her total loss claim. State Farm based its offer upon a valuation report obtained from Audatex using the AMDV software program.

28. State Farm valued Plaintiff's total loss claim at $14,490.00[1] and paid Plaintiff that amount. State Farm's valuation was based on a market valuation report obtained from Audatex using the AMDV software program. The market valuation report listed values of four different comparable vehicles and applied a Typical Negotiation Adjustment of approximately 8.5% to all four vehicles without itemizing or explaining the basis of the adjustment and/or how the value of the deduction was determined. The use of the Typical Negotiation Adjustment to adjust Plaintiff's total loss claim downward violates the applicable insurance policy, in that Defendant applied the improper adjustment to pay Plaintiff less than the actual cash value of her total loss vehicle.

## CLASS ACTION ALLEGATIONS

29. This action is brought by Plaintiff as a class action, on her own behalf and on behalf of all others similarly situated, under the provisions of Rules 23.01 and 23.02 of the Tennessee Rules of Civil Procedure, for declaratory judgment and monetary restitution, plus interest, injunctive relief, costs, and attorney's fees. Plaintiff seeks certification of this action as a class action on behalf of the following class (the "Class"):

> All persons insured by a contract of automobile insurance issued by State Farm to a Tennessee resident, and who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment that included a downward adjustment premised on a "Typical Negotiation Adjustment" or similar adjustment.

---

[1] This amount is not inclusive of tax, title, and transfer fees.

30. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

31. The exact number of the Class, as herein identified and described, is not known, but it is estimated to be at least one hundred. Accordingly, the Class is so numerous that joinder of individual members herein is impracticable.

32. There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class, and the relief sought is common to the entire class. In particular, the common questions of law and fact include:

   a. Whether State Farm systemically applied Typical Negotiation Adjustments or substantially similar adjustments to calculate the value of total loss vehicles;

   b. Whether, through the above referenced practice, State Farm failed to pay its insureds the actual cash value of their loss vehicles;

   c. Whether, through the above referenced practice, State Farm breached its contracts with its insureds;

   d. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief; and

   e. Whether Plaintiff and the Class are entitled to compensatory damages in the amount of the invalid adjustment applied to Plaintiff's and each Class member's valuation.

33. The claims of the Plaintiff, who is representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the same acts of State Farm giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

34. The named Plaintiff is the representative party for the Class, and is able to, and will fairly and adequately, protect the interests of the Class. The attorneys for Plaintiff and the Class are experienced and capable in complex civil litigation, insurance litigation, and class actions.

35. Class certification is appropriate under Tennessee Rules of Civil Procedure Rule 23.02(2) because State Farm's actions are generally applicable to the Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole.

36. Class certification is also appropriate under Tennessee Rules of Civil Procedure Rule 23.02(3) because the common questions of law and fact in this case predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by Class members

whose claims are too small and complex to individually litigate against a large corporate defendant.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

37. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

38. State Farm's insurance contract with its insureds provides coverage for the total loss of a vehicle on the basis of actual cash value or replacement with another of like kind and quality. Moreover, in determining the actual cash value of a total loss vehicle, State Farm must consider the vehicle's fair market value at the time of loss.

39. State Farm has breached its contract with Plaintiff and the members of the Class by not paying total loss claims upon the actual cash value of loss vehicles. State Farm departed from the use of actual cash value by basing its valuations and claims payments on the values of comparable vehicles that have been artificially reduced by an unjustified Typical Negotiation Adjustment that is (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not specific or appropriate as to dollar amount.

40. State Farm's policy, and its duties to insureds, must be construed in the context of, and consistent with, Tennessee law applicable to insurance contracts. In Tennessee, for total loss claims that deviate from providing actual cost values, "[a]ny deductions from the cost, including deduction for salvage, must be as specific as reasonably possible, and specific and appropriate as to dollar amount . . . ." Tenn. Comp. R. & Regs. R. 0780-01-05-.09(c). The purpose of this requirement is to ensure that any adjustments

are reasonable, justified, and fully explained to ensure that consumers have the ability to evaluate and challenge any deductions that are improper and/or without basis.

41. State Farm's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract.

42. State Farm's breaches of contract and violations of law have caused damages to Plaintiff and the Class. Plaintiff's and proposed Class members' damages include the amounts improperly deducted by State Farm from the insureds' payments on the basis of a Typical Negotiation Adjustment.

## SECOND CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

43. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

44. Implied in each of Defendants' insurance policies is a covenant that Defendants will act in good faith and deal fairly with their insureds; that they will do nothing to interfere with their insureds' rights to receive the benefits of the policies; that they will not place their own interests before those of their insureds; that they will exercise diligence, good faith, and fidelity in safeguarding the interest of their insureds; and that they will deal ethically with their insureds and will fairly and adequately inform them of the nature and scope of their insurance coverage (hereinafter referred to as "covenant of good faith and fair dealing").

45. Defendants have breached the covenant of good faith and fair dealing by, inter alia:

   a. Intentionally applying Typical Negotiation Adjustments to undervalue comparable vehicles, and, in turn, insureds' total loss vehicles;

    b. Failing to pay insureds the actual cash value of their total loss vehicles;

    c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner, which is inconsistent with applicable law, solely in an effort to understate the fair market value of total loss vehicles and avoid paying insureds the actual cash value on their total loss claims; and

    d. Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

46. Plaintiff is informed and believes and alleges thereon that Defendants are in breach of the covenant of good faith and fair dealing and did the acts complained of herein, among others, for the purpose of undervaluing comparable and total loss vehicles and underpaying insureds' the actual cash value of their total loss claims.

47. State Farm's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and proposed Class members' damages include the amounts improperly deducted by State Farm from the insureds' payments on the basis of a Typical Negotiation Adjustment.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT

48. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

49. A dispute between Plaintiff and the proposed Class and State Farm is before this Court under Tenn. Code Ann. §§ 29-14-101, *et seq.* concerning the construction of the auto insurance policies issued by Defendant and the rights arising under that policy.

50. Plaintiff, for herself and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with State Farm, as well as a violation of Tennessee law, for State Farm to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as specific as reasonably possible or appropriate as to dollar amount.

51. State Farm's unlawful common policy and general business practice as described herein are ongoing. Accordingly, State Farm has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class requiring it to settle total loss claims on the basis of the total loss vehicle's actual cash value.

52. As a result of these breaches of contract, Plaintiff and the proposed Class members have been injured. Plaintiff's and proposed Class members' damages include the amounts illegally deducted by State Farm from the insureds' payments.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a)  determine that this action may be maintained as a class action under Rule 23 of the Tennessee Rules of Civil Procedure, appoint Plaintiff as class representative, and appoint undersigned counsel as Class Counsel;

b)  enter an order finding that State Farm's actions described herein constitute a breach of contract;

c)  enter a declaratory judgment that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with State Farm, as well as a violation of Tennessee law, for State Farm to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Adjustments;

d)  enter an order enjoining State Farm from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Adjustments;

e)  enter an order requiring State Farm to pay compensatory damages to Plaintiff and all members of the proposed class in the amount of 100% of the proceeds that State Farm wrongfully deducted from its insureds' payments in the form of Typical Negotiation Adjustments or alternatively enter an order requiring State Farm to prepare a total loss valuation for Plaintiff and each member of the Class that does not include any Typical Negotiation Adjustments or any other deductions that are arbitrary, unmeasurable, indiscernible, nonitemized, or not as specific as reasonably possible or appropriate as to dollar amount;

f) award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g) award reasonable attorneys' fees and costs pursuant to applicable law; and

h) grant such other legal and equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff and the Class members hereby request a trial by jury.

Respectfully submitted,

RAINWATER, HOLT & SEXTON, P.A.

_____
David A. McLaughlin, Esq. (015561)
Attorney for the Plaintiff
254 Court Avenue – Suite 209A
Memphis, TN 38103
(901) 567-8286 phone
(901) 630-4359 fax
DMcLaughlin@RainFirm.com

-And-

HANK BATES, *pro hac pending*
TIFFANY WYATT OLDHAM, *pro hac pending*
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St.
Little Rock, AR 72201
Tel: (501) 312-8500
Fax: (501) 312-8505

*Counsel for Plaintiff and the Proposed Class*