IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JESSICA CLIPPINGER, on behalf of herself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., )<br>)<br>Defendant. ) | No. 2:20-cv-02482-TLP-cgc<br><br>JURY DEMAND |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY**

Defendant State Farm Mutual Automobile Insurance Co. moves to dismiss Plaintiff Jessica Clippinger's claims for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (ECF No. 25.) In the alternative, Defendant asks that the Court compel appraisal and stay this action. (*Id.*) Plaintiff responded in opposition, and Defendant replied. (ECF Nos. 33 & 42.) For the reasons below, the Court **DENIES** Defendant's motion to dismiss and, in the alternative, to compel appraisal and stay the case. But it does so without prejudice.

**BACKGROUND**

I.      **Plaintiff's Allegations**

1

This is a class action brought by Plaintiff on behalf of herself and all others similarly situated. (ECF No. 1-1 at PageID 12.) Plaintiff alleges these facts in her complaint.[1] State Farm sells automobile insurance that provides coverage for property damage to an insured's vehicle. (*Id.* at PageID 15.) Plaintiff has an insurance contract with Defendant. (*Id.*; ECF No. 33-1 at PageID 298.) The contract requires Defendant to cover the total loss of her vehicle. (*Id.*) Defendant may cover that loss by replacing the vehicle or giving Plaintiff the "actual cash value" of the loss vehicle. (*Id.* at PageID 15–16.)

Plaintiff here owned a 2017 Dodge Grand Caravan SXT 2WD 4-door passenger van. (*Id.* at PageID 19.) Plaintiff had a wreck. The insurance adjuster considered it a total loss. So she submitted a claim for the total loss of her vehicle, and Defendant provided a total loss valuation for her claim. (*Id.* at PageID 20.) In determining the loss vehicle's cash value, Defendant calculated the vehicle's fair market value.[2] (*Id.* at PageID 16.) But it did not offer Plaintiff the full amount.

Instead, Defendant deducts an amount that reflects "typical negotiation" adjustment. Plaintiff claims that Defendant violates its insurance contracts by relying on "manipulated data and reports" to calculate its payments on total loss claims. (*Id.*) Plaintiff highlights that Defendant uses a third-party company, Audatex, to conduct a market valuation report. (*Id.*) Audatex uses a software program, Autosource Market-Driven Valuation ("AMDV"), to calculate the value of a total loss vehicle. (*Id.*) To determine the loss vehicle's fair market value, the

---

[1] The Court accepts all of Plaintiff's allegations as true under Fed. R. Civ. P. 12. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing Rule 12 motion to dismiss standard).

[2] Plaintiff alleges that all of Defendant's insurance policies during the relevant period contained this language or similar language. (ECF No. 1-1 at PageID 16.)

AMDV software looks at itemized internet sales prices for vehicles comparable to the loss vehicle. (*Id.* at PageID 17.) But rather than using the actual price data for the comparable vehicles, the report applies a deduction "to account for typical negotiation." (*Id.*) As a result, Plaintiff claims that Defendant pays its insureds less than cash value for their loss vehicles. (*Id.*)

The negotiation adjustment in Plaintiff's case led to a deduction of 8.5%. (*Id.* at PageID 17, 20.) The valuation report's only explanation for the adjustment is that "[t]he selling price may be substantially less than the asking price," and so "the asking price has been adjusted to account for typical negotiation according to each comparable price." (ECF No. 1-4 at PageID 58.) The report does not explain how Audatex determined that 8.5% is an appropriate deduction. (ECF No. 1-1 at Page ID 18.) And the report does not include the specific dollar amount that Defendant deducted when determining the actual cash value of Plaintiff's vehicle. (ECF No. 1-1 at PageID 19; *see* ECF No. 1-4 at PageID 54–62.) Plaintiff alleges that Defendant uses this "unreasonable, inappropriate, and unspecific" negotiation adjustment to "artificially reduce the values of comparable vehicles," and so reduces the actual cash value of the insured's total loss vehicle. (*Id.* at 16.) What is more, Plaintiff claims that the negotiation adjustment is baseless and goes against industry practice. (*Id.* at PageID 16–17.)

Plaintiff sues for breach of contract and breach of the covenant of good faith and fair dealing. (*Id.* at PageID 23–25.) Plaintiff also seeks a declaratory judgment that Defendant's conduct breaches its contracts with its insureds and violates Tennessee law. (*Id.* at PageID 26–27.)

Meanwhile Defendant argues that this lawsuit is premature because the insurance contract says that Plaintiff must seek an independent appraisal before she can even raise this issue. And so the Court next discusses the alleged appraisal provision.

## II.      The Appraisal Provision

Defendant argues that this Court should dismiss Plaintiff's claims because she failed to complete the appraisal process before suing as State Farm Policy Form 9842A ("Policy Form") requires.  (*See* ECF No. 26-1.)  Under the Policy Form's appraisal provision:

> (1) The owner of the ***covered vehicle*** and ***we***[3] must agree upon the actual cash value of the covered vehicle.  If there is disagreement as to the actual cash value of the ***covered vehicle***, then the disagreement will be resolved by appraisal upon written request of the owner or ***us***, using the following procedures:
> (a) The owner and ***we*** will each select a competent appraiser.
> (b) The two appraisers will select a third competent appraiser.  If they are unable to agree on a third appraiser within 30 days, then either the owner or ***we*** may petition a court that has jurisdiction to select the third appraiser.
> (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party.  Both parties will share equally the cost of the third appraiser.
> (d) The appraisers shall only determine the actual cash value of the ***covered vehicle***.  Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class representative basis.
> (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the ***covered vehicle*** and ***us***.
> (f) ***We*** do not waive any of ***our*** rights by submitting to an appraisal.

(*Id.* at PageID 187) (emphasis in original).  What is more, the Policy Form provides that "[l]egal action may not be brought against [Defendant] until there has been full compliance with all the provisions of this policy."  (*Id.* at PageID 196.)

But Plaintiff denies ever receiving a copy of the Policy Form or agreeing to that provision.  (ECF No. 33-1 at PageID 298.)  She renewed her insurance policy periodically but did not receive a copy of the full policy booklet upon renewal.  (*Id.* at PageID 299.)  In fact,

---

[3] "We" refers to Defendant.

4

Defendant did not send Plaintiff a copy of the Policy Form until after she sued, even though her attorney requested a copy before suing.  (*See* ECF No. 33-2.)

Defendant now argues that Plaintiff lacks standing to sue because she did not first participate in the appraisal process, as required by the Policy Form.  (ECF No. 26 at PageID 153.)  Next Defendant argues that, without engaging in the appraisal process, Plaintiff cannot properly allege any damages.  (*Id.* at PageID 154–58.)  Defendant also argues that the Court should dismiss Plaintiff's declaratory judgment claim because it duplicates Plaintiff's breach of contract claim.  (*Id.* at PageID 158–61.)  Finally, Defendant argues that, in the alternative, the Court should compel appraisal and stay this action.  (*Id.* at PageID 161–64.)

The Court addresses each argument in turn.[4]

## SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

Subject matter jurisdiction concerns "the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis in original).  Defendant removed this case to federal court from Shelby County Circuit Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)–(b), and 1453.  (ECF No. 1 at PageID 1.)  The Court finds that subject matter jurisdiction under CAFA is proper.

Under CAFA, federal courts have original jurisdiction over a class action if: (1) the class has more than 100 members; (2) the parties are minimally diverse; and (3) the matter in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(2), (d)(5)(B); *see also*

---

[4] Defendant argues that Plaintiff lacks standing to sue.  (ECF No. 26 at PageID 153.)  Defendant thus challenges the Court's subject matter jurisdiction under Rule 12(b)(1).  (*Id.*)  In the next section, the Court only addresses its subject matter jurisdiction generally under CAFA.  Then the Court will turn to Defendant's argument that the Court lacks subject matter jurisdiction because Plaintiff lacks standing to sue.

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). CAFA's provisions "should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016) (quoting S. Rep. 109–14, at 43 (2005)). And to remove a case under CAFA, a defendant must file notice of removal with "a short and plain statement of the grounds for removal."[5] 28 U.S.C. § 1446(a); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("Section 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

The parties here satisfy CAFA's statutory requirements. First, Plaintiff filed this case as a class action. (*See* ECF No. 1-1 at PageID 20.) She also alleged that the class has "at least one hundred" members. (*Id.* at PageID 21.) Second, the parties are minimally diverse. Minimal diversity requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." § 1332(d)(2)(A). Plaintiff and all proposed class members here are citizens of Tennessee. (ECF No. 1-1 at PageID 14.) And Defendant alleges that it is a citizen of Illinois. (ECF Nos. 1 at PageID 5; 1-2 at PageID at 29.) The parties are therefore minimally diverse.

And third, Plaintiff meets the amount in controversy requirement. To see if the class meets the amount in controversy requirement, courts look to the aggregate amount in controversy. *Standard Fire Ins. Co.*, 568 U.S. at 592 ("[T]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [plaintiff's] proposed class and determine whether the resulting sum

---

[5] The Court has not yet considered class certification. A court, however, retains subject jurisdiction under CAFA even if it later denies class certification. *Metz v. Unizan Bank*, 649 F.3d 492, 500–01 (6th Cir. 2011).

exceeds $5 million.") Defendant here alleges that the aggregate amount in controversy exceeds $5,000,000. (ECF No. 1 at PageID 8.) Assuming that Defendant's valuations caused an average downward adjustment of 8.5%, as Plaintiff alleges here, Defendant estimates that "the difference between the adjusted and the actual total loss valuations is $57,496,140.76."[6] (*Id.*; 1-2 at PageID 31.) Defendant's allegations therefore satisfy the requirements for subject matter jurisdiction under CAFA.

A federal court with diversity jurisdiction under 28 U.S.C. § 1332 "must apply the law of the forum state, Tennessee, in interpreting the parties' contract and its provisions." *Glob. Aerospace, Inc. v. Phillips & Jordan, Inc.*, No. 3:15-CV-105-PLR-CCS, 2015 WL 5514627, at *2 (E.D. Tenn. Sept. 17, 2015). So the Court applies Tennessee law to the parties' insurance contract.

## LEGAL ANALYSIS

I. **Plaintiff's Claims Survive a 12(b)(1) Motion to Dismiss**

   A. **Legal Standard of a 12(b)(1) Motion to Dismiss**

Under Rule 12(b)(1), a party may, as Defendant did here, challenge the Court's subject matter jurisdiction over Plaintiff's claims. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When the defendant makes such a motion, the plaintiff bears the burden of proving subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

---

[6] In her amended complaint, Plaintiff states that the class's aggregate compensatory damages are below CAFA's jurisdictional threshold. (ECF No. 1-1 at PageID 14–15.) But after Defendant alleged compensatory damages far beyond the $5 million statutory amount, Plaintiff told the Court during a status conference that it did not contest jurisdiction under CAFA. As a result, the Court accepts Defendant's alleged amount in controversy.

Under a 12(b)(1) motion to dismiss, a party can make either a facial or factual attack on subject matter jurisdiction. *Ohio Nat. Life Ins. Co.*, 922 F.2d at 325. A facial attack "merely questions the sufficiency of the pleading," and so the court takes the complaint's allegations as true. *Id.* But when the factual predicate to subject matter jurisdiction is at issue, the court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* Therefore "the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." *Moir*, 895 F.2d at 269. Defendant also questions Plaintiff's standing to sue.

### B.   Plaintiff's Standing

To have standing, (1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and defendant's conduct, and (3) it must be likely that a favorable decision from the Court will redress the plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish injury in fact, a plaintiff must allege "an invasion of a legally protected interest" that is both "concrete and particularized," and "actual or imminent, no conjectural or hypothetical." *Id.* (internal quotations omitted).

Defendant argues that Plaintiff lacks standing here because there is no cognizable injury-in-fact. (ECF No. 26 at PageID 153.) Defendant claims that because Plaintiff's insurance policy requires an appraisal if the parties disagree about the actual cash value of her vehicle. And so Plaintiff suffers no injury unless the appraisal process shows that Defendant paid less than the vehicle's cash value. (*Id.*) Without the appraisal, Plaintiff lacks standing.

But the parties here dispute a fact that is essential to Defendant's argument—whether Plaintiff's insurance policy contained an appraisal provision. Unlike a motion under Rule 12(b)(6), if there is a factual dispute, under Rule 12(b)(1), the court does not assume the truthfulness of the plaintiff's allegations, but instead considers both parties' evidence. *Ohio Nat.*

*Life Ins. Co.*, 922 F.2d at 325. Looking at the evidence produced by both parties here, the Court finds that Plaintiff carries her burden and proves the Court's subject matter jurisdiction.

With its motion to dismiss, Defendant submitted State Farm Policy Form 9842A. (ECF No. 26-1 at 167.) Defendant claims that State Farm Policy Form 9842A is Plaintiff's insurance policy. (ECF No. 25 at 138.) And under the Policy Form, the parties must participate in the appraisal process if the parties disagree about the actual cash value of the covered vehicle. (ECF Nos. 26 at PageID 146; 26-1 at PageID 186.) While Defendant here requested appraisal after Plaintiff sued, Plaintiff refused to participate. (ECF No. 26-2.) So because there was no appraisal, Defendant now argues that Plaintiff lacks standing to sue. (*Id.*)

At the same time, however, Plaintiff claims that she never received or agreed to this policy or the appraisal provision. (ECF No. 33 at PageID 279.) Plaintiff even attaches an affidavit swearing that she does not recall ever receiving the policy, and that she did not receive a new copy of the policy when she periodically renewed her car insurance. (ECF No. 33-1 at PageID 298–99.)

In any event, Plaintiff did not sign the Policy Form 9842A that Defendant filed. (*See* ECF No. 26-1.) In fact, Defendant offers no evidence that the appraisal policy provision was part of Plaintiff's insurance contract.[7]

The bottom line is that, on the record here, nothing connects Plaintiff to State Farm Policy Form 9842A. There is thus no evidence here that Plaintiff's policy required her to seek an appraisal before suing. So in the end, to have standing, Plaintiff must only allege that she has

---

[7] The Court acknowledges that this policy may be the standard policy given to every insured in Tennessee. But beyond filing the policy and claiming that it applies to Plaintiff, Defendant offers no evidence that Plaintiff agreed to or was aware of the policy terms.

9

suffered an injury in fact, that Defendant caused her injury, and that a favorable decision from this Court will redress Plaintiff's injuries. *See Lujan*, 504 U.S. at 560-61. Plaintiff's complaint sufficiently alleges these facts. *See Gobert v. Allstate Ins. Co.*, No. 6:15-CV-222-JWD-CBW, 2019 WL 2064414, at *8–9 (W.D. La. Mar. 7, 2019) (finding plaintiff's claims that defendant gave plaintiff less than the true value of her vehicle survive a 12(b)(1) motion to dismiss for lack of standing).

As discussed in this Court's analysis of Defendant's 12(b)(6) motion, Defendant's actions directly caused Plaintiff actual, particularized damages—$1,444 in damages, to be exact. (ECF No. 33 at PageID 275.) And, it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). What is more, when a case is "at the pleading stage," the plaintiff must only "clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted).

Plaintiff here alleges a cognizable claim that Defendant routinely pays its insureds less than cash value of their total-loss vehicles. And a favorable decision from the court will redress Plaintiff's injury. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("There must be a substantial likelihood, as opposed to mere speculation, that a favorable decision in this court will redress [the plaintiff's] alleged injury." (internal quotations omitted)); *Forest City Residential Mgmt., Inc., v. Beasley*, 71 F. Supp. 3d 715, 274 (E.D. Mich. 2014) (discussing redressability requirement). Plaintiff seeks compensatory damages and a declaratory judgment that Defendant's valuation practices breach Plaintiff's insurance contract. (ECF No. 1-1 at PageID 26–27.) And the Court finds that it is "likely," not "speculative," that compensatory

damages and Plaintiff's requested declaratory judgment would redress Plaintiff's injury here. *Lujan*, 504 U.S. at 561

As a result, Plaintiff has standing to bring her claims.[8]  That is why, after considering the evidence presented by both parties, the Court **DENIES WITHOUT PREJUDICE** Defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[9]

## II.     Plaintiff's Claims Survive a 12(b)(6) Motion to Dismiss

### A.     Legal Standard of a 12(b)(6) Motion to Dismiss

Courts assess whether a complaint states a claim upon which relief can be granted under the standards for Rule 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555–557 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). To survive a motion to dismiss under 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Though a court will grant a motion to dismiss if a plaintiff has no plausible claim for relief, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v.*

---

[8] Plaintiff also argues that, even if Plaintiff's policy included an appraisal provision, Defendant cannot enforce the provision because it lacks mutuality and is unconscionable. (ECF No. 33 at PageID 280–86.)  The Court does not address this argument because it finds no evidence that Plaintiff's policy included an appraisal agreement.

[9] As the case progresses, Defendant can renew its motion to dismiss for lack of standing if discovery leads to new information on this issue.

11

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Herhold v. Green Tree Servs., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

Defendant first argues that the Court should dismiss Plaintiff's contract claims because, without appraisal, Plaintiff cannot allege that she has suffered any damages.  (ECF No. 26 at PageID 146.)  Defendant then argues that the Court should dismiss Plaintiff's declaratory judgment claim because it duplicates Plaintiff's contract claims.  (*Id.* at PageID 159.)  The Court now turns to Plaintiff's contract claims.

### B.     Plaintiff's Contract Claims

Plaintiff brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  (ECF No. 1-1 at PageID 23–25.)  To establish a claim for breach of contract under Tennessee law, Plaintiff must allege "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach."  *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011).  Defendant here argues that, until the parties complete the appraisal process, Plaintiff's damages are unknown.  (ECF No. 26 at PageID 146.)  This means, according to Defendant, that it is impossible for Plaintiff to plausibly allege that Defendant did not pay her the actual cash value of her vehicle.  (*Id.*)

Plaintiff, however, argues that Defendant should not apply the negotiation adjustment to the actual cash value of her vehicle.  (ECF No. 1-1 at PageID 13.)  She centers this argument on the fact that the internet lists comparable sale prices based on market prices.  (ECF No. 33 at PageID 289.)

Plaintiff claims that Defendant routinely deducts 8.5% as a negotiation adjustment from the base value of the comparable vehicles and uses the resulting figure as the value of an insured's total loss vehicle. (ECF No. 1-1 at PageID 13.) Plaintiff therefore claims that, in her case, Defendant's conduct caused her $1,444 in damages. (ECF No. 33 at PageID 275.) What is more, the valuation report does not explain why an 8.5% deduction is appropriate or how Defendant arrived at precisely an 8.5% deduction. (*See* ECF No. 1-4 at PageID 54–62.)

Plaintiff also alleges that Defendant's valuation practices harm other insured Tennessee residents by reducing the amount owed to them by 8.5%. (ECF No. 1-1 at PageID 20.) Indeed, by Defendant's own calculation, this negotiation adjustment reduction has potentially affected over 67,262 Tennessee insureds. (ECF No. 1 at PageID 6.) Plaintiff thus alleges that Defendant's valuations practices—whether or not the parties ever engage in an appraisal process—injure Tennessee insureds. And so even if appraisal shows that Defendant paid Plaintiff the actual cash value of her vehicle, Plaintiff can still challenge Defendant's use of an arbitrary and unexplained adjustment rate of 8.5%. Plaintiff therefore sufficiently alleges damages even though she never completed the appraisal process.

Courts have also denied motions to dismiss a plaintiff's breach of contract claim in cases involving auto insurance companies that similarly apply a downward negotiation adjustment when determining payments on total loss claims. *See Zuern v. IDS Prop. Cas. Ins. Co.*, No. C19-6235-MLP, 2020 WL 2114502, at *3–6 (W.D. Wash. May 4, 2020); *Shields v. State Farm Mut. Ins. Co.*, No. 6:19-CV-01359, 2020 WL 838280, at *3 (W.D. La. Feb. 19, 2020); *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, 2018 WL 3344791, at *5 (W.D. Wash. July 9, 2018).

In the end, taking Plaintiff's allegations of true, Plaintiff alleges that the 8.5% adjustment personally injured her and injures the rest of her class. Accepting Plaintiff's arguments as true, Plaintiff plausibly alleges damages here. The Court finds that Defendant has not shown that Plaintiff must first participate in the appraisal process to sufficiently allege damages here. The Court therefore **DENIES WITHOUT PREJUDICE** Defendant's motion to dismiss Plaintiff's breach of contract claim.

Plaintiff's breach of the implied covenant of good faith and fair dealing claim likewise survives Defendant's motion to dismiss. In Tennessee, "there is implied *in every contract* a duty of good faith and fair dealing in its performance and enforcement . . . ." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) (quoting *Wallace v. Nat'l Bank of Com.*, 938 S.W.2d 684, 686 (Tenn. 1996)). Plaintiff here alleges that Defendant uses an "unreasonable, inappropriate, and unspecific" negotiation adjustment to "artificially reduce the values of comparable vehicles." (ECF No. 1-1 at 16.) This allegation raises questions about whether Defendant acted reasonably and in good faith. Accepting these allegations as true, the Court thus **DENIES** Defendant's motion to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim.

### C.     Plaintiff's Declaratory Judgment Claim

Plaintiff seeks a declaratory judgment that, "in paying total loss claims with first-party insureds, it is a breach of the insurance contract with State Farm, as well as a violation of Tennessee law, for State Farm to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Adjustments." (ECF No. 1-1 at PageID 27.) Defendant argues that the Court should dismiss Plaintiff's declaratory judgment claim because it duplicates Plaintiff's contract claims. (ECF No. 26 at PageID 159.)

The Court, however, will not dismiss Plaintiff's request for declaratory relief at this stage of the litigation.

Plaintiff brings her declaratory judgment claim under Tenn. Code Ann. §§ 29-14-101, *et seq*. (ECF No. 1-1 at PageID 26). But "after removal, a federal court will apply the federal Declaratory Judgment Act, not state law." *Ky. Mist Moonshine, Inc. v. Univ. of Ky.*, 192 F. Supp. 3d 772, 785 (E.D. Ky. 2016); *Foreword Mag. Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 31044, at *3 (W.D. Mich. Jan. 5, 2011). Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," as long as the controversy is within the court's jurisdiction. 28 U.S.C. § 2201. "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

At this point, Plaintiff must only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And allowing declaratory relief is in the Court's discretion. *Wilton*, 515 U.S. at 286. With that in mind, the Court finds that Plaintiff has adequately alleged that she is entitled to declaratory relief. The Court therefore **DENIES** Defendant's motion to dismiss Plaintiff's declaratory judgment claim.

## MOTION TO COMPEL APPRAISAL AND STAY THE CASE

Defendant argues that, in the alternative, this Court should compel appraisal and stay this action. (ECF No. 26 at PageID 161–64.) Because there is no evidence that Plaintiff entered a

contract requiring appraisal, the Court **DENIES WITHOUT PREJUDICE** Defendant's motion to compel appraisal and stay the case.[10]

## CONCLUSION

The Court finds that Plaintiff has standing to bring her claims. She also sufficiently states a claim upon which relief can be granted. The Court therefore **DENIES WITHOUT PREJUDICE** Defendant's motion to dismiss Plaintiff's claims. And because there is no evidence that Plaintiff entered a contract requiring appraisal, the Court **DENIES WITHOUT PREJUDICE** Defendant's motion to compel appraisal and stay the case.

**SO ORDERED**, this 17th day of November, 2020.

      s/Thomas L. Parker
      THOMAS L. PARKER
      UNITED STATES DISTRICT JUDGE

---

[10] As the case progresses, Defendant can renew its motion to compel appraisal if discovery leads to new information on this issue.