IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA CLIPPINGER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:20-cv-02482-TLP-cgc |
| v. | ) ) | JURY DEMAND |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. and AUDATEX NORTH AMERICA, INC., d/b/a AUDAEXPLORE, a Delaware Corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO COMPEL APPRAISAL AND STAY**

Defendant State Farm Mutual Automobile Insurance Co. moves for summary judgment on all Plaintiff Jessica Clippinger's claims. (ECF No. 68.) In the alternative, Defendant asks that the Court compel appraisal and stay this action. (*Id.*) Plaintiff responded in opposition (ECF No. 93), and Defendant replied. (ECF No. 95.) For the reasons below, the Court **DENIES** Defendant's motion for summary judgment and **GRANTS** the motion to compel appraisal and stay.

## BACKGROUND

### I. Undisputed Facts

The parties exchanged statements of undisputed facts and responses. (ECF Nos. 68-1 & 91, 96.) And so, these facts, taken from those filings are undisputed unless otherwise stated.

A.      **Factual Background and Plaintiff's Allegations**

Plaintiff has a contract with Defendant for automobile insurance.  (ECF Nos. 68-1 at PageID 665; 91 at PageID 1063.)  Plaintiff had a car accident in May 2019 and submitted an insurance claim to Defendant.  (ECF Nos. 68-1 at PageID 665; 91 at PageID 1063–64.) Defendant then found Plaintiff's insured vehicle, a 2017 Dodge Grand Caravan, a "total loss." (*Id.*)

Defendant sent Plaintiff a total loss valuation of her vehicle.  (ECF Nos. 68-1 at PageID 666; 91 at PageID 1064.)  And Defendant based that valuation on "a valuation report obtained from Audatex using the AMDV [Autosource Market-Driven Valuation] software program." (*Id.*)  In that valuation report, Audatex listed the values of four vehicles comparable to the loss vehicle.  (ECF Nos. 68-1 at PageID 667; 91 at PageID 1065–66.)  But Audatex deducted from the value of each vehicle a percentage representing the cost of "typical negotiation."  (*Id.*)  And so Defendant reduced the value of each of the base values of the comparable vehicles by 5%[1]. (ECF No. 91 at PageID 1066.)  What is more, Defendant failed to itemize or explain the reasoning for this deduction.  (ECF Nos. 68-1 at PageID 667; 91 at PageID 1065–66.)

Plaintiff's class action complaint alleges that Defendant improperly calculated the actual cash value of its insureds' total loss vehicles.  (ECF No. 1-1 at PageID 13.)  She claims that the contract requires Defendant to cover the total loss of her vehicle, and that Defendant can do so

---

[1] Although Plaintiff alleged in her complaint that Defendant applied an 8.5% downward adjustment to the comparable vehicles, Plaintiff's discovery responses reflect that Defendant applied at 5% downward adjustment instead.  (ECF No. 91 at PageID 1066; *see also* ECF No. 68-4 at PageID 716.)

either by replacing it or giving Plaintiff the "actual cash value"[2] of the loss vehicle. (ECF Nos. 68-1 at PageID 666–67; 91 at PageID 1065.) By applying this negotiation reduction, Plaintiff alleges that Defendant violates its insurance contracts and Tennessee law by paying its insureds less than the actual cash value of their loss vehicles. Plaintiff thus sues Defendant for breach of contract, breach of the covenant of good faith and fair dealing, and for a declaratory judgment that Defendant's actions breached its insurance contracts and violated Tennessee law. (ECF Nos. 68-1 at PageID 667; 91 at PageID 1066.)

### B.    The Appraisal Provision

In response, Defendant argues that Plaintiff's insurance policy (Policy Form 9842A (the "Policy")) contains a mandatory appraisal provision. Under that provision,

(1) The owner of the *covered vehicle* and *we*[3] must agree upon the actual cash value of the covered vehicle. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

---

[2] The Policy does not define "actual cash value." (*See* ECF No. 68-5.) It does say, however, that the "[a]ctual cash value is determined by the market value, age and condition at the time the loss occurred. Any deductible amount that applies is then subtracted." (*Id.* at PageID 736.)

[3] "We" refers to Defendant.

(f) ***We*** do not waive any of ***our*** rights by submitting to an appraisal.

(ECF No. 68-5 at PageID 757–58.)  The Policy also states that "[l]egal action may not be brought against [Defendant] until there has been full compliance with all the provisions of this policy."  (*Id*. at PageID 767.)

After Plaintiff sued Defendant, Defendant requested appraisal in writing.  (ECF Nos. 68-1 at PageID 669; 91 at PageID 1069.)  But Plaintiff refused to participate.  (*Id.*)  Because of this refusal, Defendant now moves for summary judgment.

## II.     Defendant's Motion for Summary Judgment or, in the Alternative, to Compel Appraisal

Defendant now argues that there is no genuine issue of material fact about whether Plaintiff received the Policy and then refused to participate in appraisal after Defendant invoked that provision.  (ECF No. 68-2 at PageID 673.)  Defendant also contends that the appraisal provision is mandatory under the Policy.  (*Id.* at PageID 684.)  So because Plaintiff refused appraisal, Defendant claims that Plaintiff (1) lacks standing, (2) cannot establish an injury or damages, and (3) failed to satisfy a condition precedent to suit.  (*Id.*)

Plaintiff counters that she has standing because she has proof that Defendant undervalued her car by applying the negotiation adjustment.  (ECF No. 93 at PageID 1160–64.)  She argues that she need not complete appraisal to have standing and that appraisal is not a condition precedent to suit.  (*Id.* at PageID 1164–68.)  And finally, Plaintiff claims that the appraisal provision is unenforceable because it is unconscionable, lacks mutuality of obligation, and because Defendant waived its right to enforce it.  (*Id.* at PageID 1168–73.)

Next the Court will discuss the legal standards for summary judgment.

## LEGAL STANDARDS

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). And "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49; *Matsushita*, 475 U.S. at 587. This means that, if "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); *see also Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

What is more, "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record or show that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). And so, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In the end, the "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 251–52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251). And statements in affidavits that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient evidence. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992). Now the Court turns to analyze the claims under this standard.

## ANALYSIS

Because the dispute here relates to a contract for insurance, the Court applies Tennessee law. Federal courts with jurisdiction under 28 U.S.C. § 1332 "must apply the law of the forum

6

state, Tennessee, in interpreting the parties' contract and its provisions." *Glob. Aerospace, Inc. v. Phillips & Jordan, Inc.*, No. 3:15-CV-105-PLR-CCS, 2015 WL 5514627, at \*2 (E.D. Tenn. Sept. 17, 2015); *see also Hall v. State Farm Mut. Auto. Ins. Co.*, 215 F. App'x 423, 428 (6th Cir. 2007) (applying law of the state where the court with CAFA jurisdiction is sitting).  What is more, the Policy has a choice of law provision explaining that Tennessee law controls "the interpretation and application of any provision of this policy."  (ECF No. 68-5 at PageID 767.) So the Court applies Tennessee law to the questions about the parties' insurance contract.

## I.      Plaintiff Received the Policy

Defendant argues that there is no genuine issue of material fact about whether Plaintiff received the Policy.  (ECF No. 68-2 at PageID 682.)  Indeed, Plaintiff no longer disputes that she had Policy Form 9842A.  (*See generally* ECF No. 93.)  In any event, the Court finds that there is no issue of fact about whether Plaintiff received the Policy.

### A.      Legal Standard

"Tennessee's courts recognize the rebuttable presumption that a letter that has been properly mailed has been delivered to and received by the addressee." *Bd. of Pro. Resp. v. Curry*, 266 S.W.3d 379, 389 (Tenn. 2008); *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 901 (Tenn. 2007) ("Under Tennessee law, there is a rebuttable presumption that mail was received upon proof that the letter was properly addressed, properly stamped, and duly deposited with the post office." (internal quotations omitted)).  "[T]he addressee must present credible evidence of non-receipt" to overcome the presumption. *Curry*, 266 S.W.3d at 389.  Only then does receipt become an issue of fact for the court to decide.  *Id.*

**B.      There Is a Presumption that Plaintiff Received the Policy**

The Court finds that the presumption the Plaintiff received the Policy applies here.

Defendant has proof that Plaintiff received the Policy and Plaintiff presents no evidence to the

contrary.

For the presumption to apply, Defendant must show that the letter was (1) properly

addressed, (2) properly stamped, and (3) given to the post office.  *Wimmer*, 231 S.W.3d at 901.

Defendant makes such a showing.  State Farm's Certified Policy Record reveals that Plaintiff

had policy number 226 4910-B27-42F.  (ECF Nos. 68-1 at PageID 667–68; 91 at PageID 1067.)

And that she received a Declarations page from Defendant, which explained that her policy

consisted of the Declarations page, Policy Form 9842A, and any applicable endorsements.  (*Id.*)

The parties do not dispute that Defendant's Systems Processing unit produced an Auto Policy

Declarations Page Notice (the "Notice") for Plaintiff in March 2012, and that the Notice included

Policy Form 9842A.  (ECF Nos. 68-1 at PageID 670; 91 at PageID 1070–71.)  Nor do they

dispute that Defendant gave the Notice to Pitney Bowes Presort Services ("PBPS") for presorting

and that PBPS then gave the Notice to the United States Postal Services ("USPS") for mail

acceptance.  (ECF Nos. 68-1 at PageID 670; 91 at PageID 1071–72.)

Defendant supports these undisputed facts with declarations showing that its employees

placed Plaintiff's Notice into an envelope addressed to one of her former legal addresses.  (*See*

ECF Nos. 68-7 & 69.)  First Defendant submits a declaration from the General Manager of

PBPS, Kymarra Nwabuoku.  (ECF No. 68-7.)  Nwabuoku explains that PBPS is a presort service

that collects Defendant's mail, transports it to PBPS's facility, and presorts the mail based on zip

code.  (*Id.* at PageID 780.)  After sorting the mail, "the mail is staged for verification by a USPS

clerk, who is on site," and then USPS collects the mail directly from PBPS's facility.  (*Id.* at PageID 781.)

Next Defendant presents a declaration from Lynn Vanderford, a Printing Inserting and Mailing ("PIM") Supervisor at Defendant's Insurance Support Center.  (ECF No. 69.)  The PIM Center prints, inserts, and prepares customer notices for mailing, including policy issuances.  (*Id.* at PageID 790.)  Vanderford explains that the PIM Center produced an Auto Policy Declaration Page Notice for Plaintiff on March 7, 2021.  (*Id.* at PageID 791.)  Defendant addressed the Notice to Plaintiff at 10222 Green Moss Dr. N, Cordova, Tennessee, 38018.[4]  (*Id.* at PageID 794.)  The PIM Center released this notice to PBPS for mail presorting, and a mailroom summary report "documents that all 2,276 notices prepared by Systems Processing for assembly and mailing were completed."  (ECF Nos. 68-2 at PageID 680; 69 at PageID 797–99.)

In sum, Defendant presents evidence that it properly addressed and mailed Plaintiff's insurance policy.  Plaintiff does not rebut this evidence with any proof.  (*See generally* ECF Nos. 91, 92, & 93.)  Even though Plaintiff swore in a declaration that she did "not recall being provided a copy of the full policy booklet" (ECF No. 33-1 at PageID 298), that declaration is not enough to create a genuine dispute here.  *See Boykin v. Fam. Dollar Stores of Mich., LLC*, No. 20-1153, 2021 WL 2708859, at *5–6 (6th Cir. 2021); *Classy Lady, Inc. v. Nationwide Mut. Ins. Co.*, No. 3:1-CV-739-PLR-CCS, 2014 WL 6605821, at *3 (E.D. Tenn. Nov. 19, 2014) (finding that testimony that person had no recollection of receiving a letter is not enough to create a genuine dispute of material fact).  So Plaintiff fails to present credible evidence of non-receipt.

---

[4] Plaintiff does not dispute that this address is one of her prior addresses.  (ECF No. 91 at PageID 1071.)

In the end, the Court finds that there is no genuine issue of material fact about the form of

Plaintiff's insurance policy and that she received a copy of that policy.  *See Curry*, 266 S.W.3d at

389; *Wimmer*, 231 S.W.3d at 901.  With this in mind, the Court considers now whether the

Policy's appraisal provision is valid and enforceable.  The Court finds that it is.

## II.      The Appraisal Provision Is Valid

Under the appraisal provision, if the parties disagree about the actual cash value of the

covered vehicle, the disagreement "will be resolved by appraisal upon written request" of either

party.  (ECF No. 68-5 at PageID 757.)  Defendant argues that this appraisal provision is

mandatory, that once Defendant invoked appraisal, "Plaintiff is required under the Policy to

participate in that process."  (ECF No. 68-2 at PageID 684.)  On the other hand, Plaintiff argues

that the Policy's appraisal provision is unenforceable because it is unconscionable, lacks

mutuality of obligation, and because Defendant waived its right to enforce appraisal.  (ECF No.

93 at PageID 1168–73.)

For the reasons below, the Court finds that the appraisal provision is enforceable.  That

said, appraisal is not a condition precedent to suit.

### A.      The Appraisal Provision Is Not Unconscionable

#### i.      Legal Standards

For starters, "[u]nder Tennessee law, an appraisal provision in an insurance policy is

valid."[5]  *Bard's Apparel Mfg., Inc. v. Bituminous Fire & Marine Ins. Co.*, 849 F.2d 245, 249 (6th

---

[5] "Appraisal is the act of estimating or evaluating something; it usually means the placing of
value on property by some authorized person."  *Merrimack Mut. Fire Ins. Co. v. Batts*, 59
S.W.3d 142, 149 (Tenn. Ct. App. 2001).  "Specifically, the object of appraisal in cases of
casualty insurance is to quantify the monetary value of a property loss . . . not to decide questions
of liability."  *Id.*

Cir. 1988). "Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally," and courts should construe insurance policies as "a whole in a reasonable and logical manner." *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305–06 (Tenn. 2007).

"There are two types of unconscionability: procedural and substantive." *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 499 (Tenn. Ct. App. 2008); *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 818 (Tenn. Ct. App. 2015). A contract is procedurally unconscionable when there is "a lack of meaningful choice on the part of one party." *Mitchell*, 349 S.W.3d at 499 (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001) *abrogated on other grounds by Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 115–16 (Tenn. 2016)). Substantive unconscionability occurs when the contract's terms are "unreasonably harsh" or "unreasonably favorable to the other party." *Id.*; *Wofford*, 490 S.W.3d at 818.

In short, a contract is unconscionable under Tennessee law if the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 977 (6th Cir. 2007) (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). Courts should examine the contract's "'setting, purpose, and effect,' and analyze[] other factors such as 'weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes.'" *Mitchell*, 349 S.W.3d at 499 (quoting *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004)). In the context of arbitration or appraisal, another relevant factor is whether the contract provision is too expensive. *See Stokes*

11

*v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2019-01983-COA-R3-CV, 2020 WL

5536704, at \*3 (Tenn. Ct. App. Sept. 15, 2020); *Hill v. NHC Healthcare/Nashville, LLC*, No.

M2005-01818-COA-R3-CV, 2008 WL 1901198, at \*16 (Tenn. Ct. App. Apr. 30, 2008).

What is more, "[c]ourts are more likely to find that contracts of adhesion are

unconscionable." *Mitchell*, 349 S.W.3d at 499.  A contract of adhesion is "a standardized

contract form offered to consumers of goods and services on essentially a 'take it or leave it'

basis, without affording the consumer a realistic opportunity to bargain and under such

conditions that the consumer cannot obtain the desired product or service except by acquiescing

to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (quoting

Black's Law Dictionary 40 (6th ed. 1990)).  So if a movant tries to enforce a contract of

adhesion, the movant must prove that the parties bargained over the disputed provision or that it

was a reasonable term.  *Mitchell*, 349 S.W.3d at 499.

### ii.  Appraisal Is Not Too Expensive

Plaintiff argues that the appraisal provision is procedurally unconscionable because the

Policy is a contract of adhesion.  (ECF No. 93 at PageID 1168.)  She contends that Defendant

unilaterally wrote the Policy and that Plaintiff had no opportunity to negotiate any of the Policy's

terms.[6]  (*Id.*)  She argues also that the contract is substantively unconscionable because it is

"cost-prohibitive."  (*Id.*)  Plaintiff emphasizes that the appraisal provision requires the insured to

hire an appraiser and bear half of the costs of a third appraiser.  (*Id.*; *see also* ECF No. 68-5 at

PageID 757–58.)

---

[6] Defendant does not dispute that Plaintiff did not draft or negotiate any of the terms in the
Policy.  (ECF No. 96 at PageID 1198.)

In contrast, Defendant contends that the appraisal provision is not substantively unconscionable.  Defendant argues that the Court measures substantive unconscionability at the time of contract formation, not at the time of the dispute.  *See Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 461 (Tenn. Ct. App. 2009); *Taylor*, 142 S.W.3d at 285 ("If a contract or term thereof is unconscionable *at the time the contract is made*, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." (emphasis added)).  And Plaintiff "presents no evidence that the provision was unconscionable at the time the parties executed the contract in 2012."  (ECF No. 95 at PageID 1190 (internal quotation omitted).)

The Court agrees reluctantly with Defendant.  Even assuming the Policy is procedurally unconscionable, Plaintiff has not shown that it is substantively unconscionable.  Indeed, she fails to address how the provision was unreasonable when the parties first entered the insurance contract.

True enough, Plaintiff argues that "[e]ven with a favorable appraisal, the cost of the process will almost always equal or *exceed* the amount in dispute."  (ECF No. 93 at PageID 1168–69.)  She supports this argument with a preliminary expert report from Roy Theophilus Bent, Jr., a professional personal-property appraiser.  (ECF No. 92.)  There, Bent explains that the average cost of an appraiser in Tennessee is over $500, as is the cost of umpire services.  (*Id.* at PageID 1139.)  Bent claims that Audatex on average applies a typical negotiation adjustment of around $628.55.  (*Id.* at PageID 1140.)  And only .002% of insureds' valuation reports had a typical negotiation adjustment of more than $1,500.  (*Id.*)  So Plaintiff concludes that many insureds choose not to pursue appraisal because appraisal fees often cost more than the amount in dispute.

13

This argument has some merit.  In fact, it suggests that Defendant purposefully applies a small negotiation adjustment, knowing that many insureds will not challenge the adjustment because the appraisal fee will cost more than their damages.  Perhaps this supports Plaintiff's claim for breach of the covenant of good faith and fair dealing.  But it does not show that the appraisal provision was unconscionable when Plaintiff first agreed to it in 2012.

Under the appraisal provision, the parties agreed to resolve by appraisal any disagreement about the covered vehicle's actual cash value.  (ECF No. 68-5 at PageID 757.)  This might be unconscionable if Defendant knew going in that it would apply a small enough reduction to total loss claims to reduce the chances that its insureds would agree to the hassle and cost of appraisal.  But there is no evidence of that.

Indeed, the appraisal provision is only too expensive if the value of an insured's dispute is low in comparison.  There is no proof however that, when the parties entered the insurance policy, either knew how small or large Plaintiff's claims would be.  Plus, though Plaintiff claims that the cost of appraisal "was neither practical nor possible" after the total loss of her vehicle (ECF No. 93 at PageID 1171), she does not argue that this was the case when she entered the contract.

What is more, other courts considering similar appraisal provisions have found that the provisions are not unconscionable.  This is true even though the cost of appraisal "in some cases, may exceed the difference between the settlement offer and the actual cash value of the lost vehicle."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. C 08-1365 CW, 2008 WL 2620900, at *9 (N.D. Cal. June 30, 2008); *see also Bryant v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-04669-SK, 2021 WL 711495, at *6 (N.D. Cal. Jan. 13, 2021); *Bettor v. Esurance Prop. & Cas. Ins. Co.*, No. 18-61-860, 2019 WL 2245564, at *5 (S.D. Fla. Mar. 28, 2019) ("That an alternative

14

dispute resolution provision may cost a litigant money does not render the provision unconscionable.").

The bottom line is Plaintiff agreed to resolve any disagreement about her vehicle's actual cash value through appraisal.  That appraisal costs money does not make the Policy's appraisal provision "so oppressive that no reasonable person" would propose it.  *Seawright*, 507 F.3d at 977.  Nor is the appraisal provision so oppressive that "no honest and fair person would accept" it.  *Id.*

The Court considers now whether the provision is unconscionable for a different reason—lack of mutuality.

### ii.     There Is No Lack of Mutuality

Plaintiff argues that the appraisal provision is unconscionable because it lacks mutuality of obligation.  (ECF No. 93 at PageID 1171–72.)  She points to the end of the appraisal provision, which states that Defendant does not "waive any of [its] rights by submitting to an appraisal."  (ECF No. 68-5 at PageID 758.)  Plaintiff argues that this term allows Defendant "to circumvent the appraisal provision that purports to bind only the insured."  (ECF No. 93 at PageID 1171.)  This Court disagrees.

"Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other."  *Amberjack, Ltd. v. Thompson*, No. 02A01-9512-CV-00281, 1997 WL 613676, at *5 (Tenn. Ct. App. Oct. 7, 1997) (quoting *Dark Tobacco Growers Co-op. Ass'n v. Mason*, 263 S.W. 60, 67 (Tenn. 1924)).  "While consideration is necessary for every contract, mutuality of obligation is not required unless lack of mutuality will leave one party without consideration for his or her promise."  *Ussery v. City of Columbia*, 316 S.W.3d 570, 579 (Tenn. Ct. App. 2009.)  And thus "[a] contract does not lack

mutuality merely because every obligation of the one party is not met by an equivalent counter obligation of the other." *Amberjack, Ltd.*, 1997 WL 613676, at *5 (quoting *Mason*, 263 S.W. at 67). In other words, even if one contracting party gives up more of its rights than the other party, there can still be mutuality of obligation as long as the agreement has consideration. *See Anesthesia Med. Grp., P.C. v. Chandler*, No. M2005-00034-COA-R3-CV, 2007 WL 412323, at *8 (Tenn. Ct. App. Feb. 6, 2007).

The appraisal provision here does not lack mutuality of agreement. For one thing, either party can invoke appraisal. And once a party invokes appraisal, both parties have to participate. Even more to the point, both parties agree that the results of appraisal are binding. In other words, the appraisal provision is equitable because either party can invoke the provision and because it binds both parties to appraisal. *See Seawright*, 507 F.3d at 977 ("The underlying arbitration agreement is equitable in that it binds both employer and employee to arbitration and does not limit the obligations and liability of the stronger party" (internal quotations omitted)).

The court in *Bryant* considered this argument about the same appraisal provision. *Bryant*, 2021 WL 711495, at *5. That court found that the appraisal provision "applies equally to any disputes Plaintiff or Defendant may have." *Id.* The court explained,

> Plaintiff argues that the phrase at the end of the appraisal provision which states "We do not waive any of our rights by submitting to an appraisal" renders the appraisal obligations optional to State Farm, but not to [Plaintiff]. Although this particular statement is not mutual, it is not at issue in the dispute between the parties. By the plain language of this phrase, it only provides that State Farm retains its rights under the contract; it does not waive any of State Farm's obligations. Because the parties dispute the value of Plaintiff's vehicle, and because State Farm elected to proceed with the appraisal, both parties were obligated under the policy to participate in the appraisal procedure.

*Id.*

This Court agrees with the *Bryant* court's analysis on this point. The term stating that Defendant does not "waive any of [its] rights by submitting to an appraisal" is not reciprocal. Even so, "[a] contract does not lack mutuality merely because every obligation of the one party is not met by an equivalent counter obligation of the other." *Amberjack, Ltd.*, 1997 WL 613676, at *5. Put differently, although one term in the appraisal provision reserves more rights for Defendant, this does not mean that the provision lacks mutuality. And above all, that term does not limit Defendant's obligations or liability under the appraisal provision. *See Seawright*, 507 F.3d at 977.

In sum, both parties promised to go to appraisal if the either party invoked it. Both parties must select an appraiser of their choice and split the costs of a third appraiser. And both parties promised to abide by the appraiser's judgment. That is why the appraisal provision is mutual and does not lack consideration. The Court thus finds that the appraisal provision is not unconscionable.

## B. Defendant Did Not Waive Appraisal and Equitable Estoppel does not Stop It from Invoking It Now

Finally Plaintiff argues that Defendant either waived its right to invoke appraisal or that equitable estoppel should stop it from doing so. (ECF No. 93 at PageID 1172.) The Court denies both arguments in turn.

### i. Waiver

Waiver is "a voluntary relinquishment by a party of a known right," and "it may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct." *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003) (quotations omitted). Put differently, "waiver

is proven by clear, unequivocal and decisive act of the party, showing a purpose to forgo the right or benefit which is waived." *E & A Ne. Ltd. P'ship v. Music City Record Dists., Inc.*, No. M2005-01207-COA-R3-CV, 2007 WL 858779, at *7 (Tenn. Ct. App. Mar. 21, 2007). "[T]he party claiming the waiver has the burden of proving it by a preponderance of the evidence." *GuestHouse Int'l, LLC v. Shoney's N.A. Corp.*, 330 S.W.3d 166, 202 (Tenn. Ct. App. 2010) (quoting *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998)).

Plaintiff argues that Defendant waived the appraisal provision during a conversation that Plaintiff had with Defendant's agent. To support this argument, Plaintiff submitted a declaration stating that

> During the claims process for my totaled vehicle, State Farm provided me a total loss valuation of my vehicle. After I received the valuation report from State Farm, I went over it and was unhappy because I found the valuation to be low . . . The next time I spoke with a representative from State Farm, I expressed to that person that the valuation seemed low. I asked the State Farm representative if that was the maximum amount they could offer me. The State Farm representative stated that amount was it, the maximum amount State Farm could offer me. At no time did any State Farm representative inform me of the option of appraisal, or any other available option other than taking the amount offered.

(ECF No. 91-2 at PageID 1105–06.) And so, Plaintiff argues that, because Defendant "did not invoke *or even mention* the appraisal provision when Plaintiff informed State Farm that she was dissatisfied with the amount State Farm was offering," Defendant waived its right to invoke appraisal. (ECF No. 93 at PageID 1172.)

Defendant, however, argues that Plaintiff's remarks to Defendant's agent did not alert it to a dispute.[7] (ECF No. 95 at PageID 1193.) In fact, when Defendant sent her a check for the

---

[7] To support this argument, Defendant attaches a declaration from Attorney Peter W. Herzog III. (ECF No. 68-6.) Attorney Herzog's declaration states that, "I am informed and understand, including through documents I have reviewed, that prior to the filing of her lawsuit, Plaintiff had not informed State Farm Mutual Automobile Insurance Company ("State Farm"), that she

total loss of her vehicle, Plaintiff cashed it. (ECF No. 91 at PageID 1064.) As a result, Defendant argues that it did not know Plaintiff disputed her valuation until she sued here. (ECF No. 95 at PageID 1193.)

All in all, Plaintiff has failed to carry her burden of showing that Defendant waived its right to appraisal. To prove waiver, Plaintiff must point to a "clear, unequivocal and decisive act" by Defendant that showed its "purpose to forgo the right or benefit which is waived." *E & A Ne. Ltd. P'ship*, 2007 WL 858779, at *7. Simply failing to invoke appraisal after Plaintiff asked one of Defendant's agents whether their offer was the "maximum amount they could offer" does not satisfy this standard. Plaintiff's declaration did not say that she disputed the valuation or that she wanted to challenge it. That Defendant did not remind Plaintiff that her Policy included an appraisal provision does not show that Defendant waived its right to invoke appraisal. The bottom line is that Defendant took no "decisive act" conveying that it intended to waive its appraisal rights.

### ii.     Estoppel

Plaintiff next argues that equitable estoppel prevents Defendant from demanding appraisal at this point in the litigation. (ECF No. 93 at PageID 1172.) "Estoppel is similar to waiver in that both defenses acknowledge the existence of a legal right in the opposing party, but assert that some conduct by that party precludes it from exercising that right." *E & A Ne. Ltd.*

---

disagreed with the amount paid for her total loss vehicle under the insurance policy she had with State Farm." (*Id.* at PageID 777–78.) Plaintiff asks the Court to strike or disregard this declaration. (ECF No. 93 at PageID 1173–74.) She does so because Attorney Herzog "has no personal knowledge of what Plaintiff said to any State Farm employee," and he "lacks personal knowledge on how State Farm maintains the claims file records he reviewed as counsel." (*Id.*; *see also* ECF No. 96 at PageID 1222.) The Court finds that Attorney Herzog lacks personal knowledge about whether Plaintiff told Defendant that she disputed the actual cash value of her vehicle. The Court therefore disregards Attorney Herzog's declaration.

*P'ship*, 2007 WL 858779, at *7. In essence, estoppel occurs when one party's conduct "induces the other party to change position to its detriment or injury in reliance on the estopped party's action or statement." *Id.* (citing *Tenn. Asphalt Co. v. Purcell Enters., Inc.*, 631 S.W.2d 439, 444 (Tenn. Ct. App. 1982)).

A party asserting equitable estoppel must prove many elements. First, the party must show "(1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) [i]ntention, or at least expectation that such conduct shall be acted upon by the other party; [and] (3) [k]nowledge, actual or constructive of the real facts." *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004). That is not all. The party raising equitable estoppel must also prove their own "(1) [l]ack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) [r]eliance upon the conduct of the party estopped; and (3) [a]ction based thereon of such a character as to change his position prejudicially." *Id.*

One Tennessee court has considered estoppel in the appraisal context. After pointing out that appraisal provisions in insurance contracts are valid in Tennessee, the Sixth Circuit quoted this warning from the Tennessee Supreme Court: "[a]ny attempt on the part of either party to misuse or pervert the provisions of the policy as to an appraisal, so as to unreasonably delay an adjustment . . . is a breach of good faith, and should be treated as a waiver of the condition." *Bard's Apparel Mfg., Inc.*, 849 F.2d at 249 (quoting *Hickerson v. German-Am. Ins. Co.*, 33 S.W. 1041, 1044 (Tenn. 1896)). But still a party raising equitable estoppel must still show prejudice resulting from the other party's misconduct. *See Bard's Apparel Mfg., Inc.*, 849 F.2d at 249.

Here Plaintiff argues that Defendant "presented the total loss settlement on a take-it-or-leave-it basis," and thus acted "with an intent to have Plaintiff rely upon State Farm's statement and with an intent to forego the appraisal process." (ECF No. 93 at PageID 1173.) She contends also that Defendant "deliberately delayed invoking appraisal until after Plaintiff filed suit," and that she will suffer "substantial prejudice if State Farm's post-suit demand is enforced." (*Id.*)

But Plaintiff has not shown that she suffered any prejudice because of Defendant's failure to invoke appraisal sooner. Even if Defendant meant to trick Plaintiff into "forego[ing] the appraisal process," Plaintiff never lost her right to invoke appraisal. Either party can demand appraisal under the Policy, and Plaintiff could have requested an appraisal before Defendant did. In effect, Plaintiff has shown little prejudice resulting from Defendant's actions. *Osborne*, 130 S.W.3d at 774 (explaining that party raising equitable estoppel must show reliance and prejudice). And as explained above, Plaintiff's claim that Defendant tried to "misuse or pervert the provisions of the policy as to an appraisal, so as to unreasonably delay an adjustment," is unsupported. *Bard's Apparel Mfg., Inc.*, 849 F.2d at 249.

In sum, Plaintiff's waiver and estoppel arguments fail because Defendant never waived its right to appraisal. Nor did Plaintiff prejudicially change her position because of Defendant's conduct. The Court thus finds that Defendant can validly invoke the appraisal provision here.

Next the Court considers whether Plaintiff should have gone to appraisal before suing.

## III.   Appraisal Is Not a Condition Precedent to Suit

Defendant claims that the Policy makes appraisal a condition precedent to suit. (*See* ECF Nos. 68-2 at PageID 688; 95 at PageID 1195.) So Defendant argues that the Court should either dismiss the case because Plaintiff breached this condition precedent, or stay the case and compel arbitration. (*Id.*)

21

A condition precedent is "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.  If the condition does not occur and is not excused, the promised performance need not be rendered." *Condition Precedent*, Black's Law Dictionary (11th ed. 2019).  To create a condition precedent, the contract provision need not include any specific language. *Harlan v. Hardaway*, 796 S.W.2d 953, 958 (Tenn. Ct. App. 1990).  But "the presence of a condition is usually signaled by a conditional word or phrase such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' and 'subject to.'" *Id.*  And so, "[w]hether a contractual provision is or is not a condition precedent depends upon the parties' intention which should be gathered from the language they employ and in light of all the circumstances surrounding the contract's execution." *Id.* at 957–58.  What is more, courts in Tennessee do not favor conditions precedent. *Id.*; *Koch v. Constr. Tech., Inc.*, 924 S.W.2d 68, 71 (Tenn. 1996).

With all this in mind, the Court finds that appraisal is not a condition precedent here. Defendant argues that "[b]ecause State Farm timely requested an appraisal . . . Plaintiff is obligated to participate in that process before filing suit."  (ECF No. 68-2 at PageID 689.) Defendant emphasizes that under the Policy, "[l]egal action may not be brought against [State Farm] until there has been full compliance with all the provisions of this policy."  (ECF No. 68-5 at PageID 767.)  Defendant thus argues that, because Plaintiff refuses to participate in an appraisal, there has not "been full compliance" with all of the Policy's provisions.  (ECF No. 68-2 at PageID 689.)

But nothing in the appraisal provision's language makes appraisal a condition precedent to suit.  To be sure, if the parties disagree about the actual cash value of the loss vehicle, they must participate in appraisal—but only if a party *requests appraisal in writing*.  (*See* ECF No. 68-5 at PageID 757.)  Put another way, appraisal only becomes mandatory when (1) the parties

disagree about the loss vehicle's actual cash value and (2) a party requests appraisal in writing. When Plaintiff sued Defendant, neither party had properly invoked the appraisal provision. Only after Plaintiff sued did Defendant invoke the appraisal provision, not before. As a result, there is no evidence that Plaintiff's failure to seek an appraisal before suing violated this provision of the Policy.

In the end, considering both the circumstances surrounding the Policy's creation and the appraisal provision's plain language, the Court finds no intent to make appraisal a condition precedent to suit. *See Harlan v. Hardaway*, 796 S.W.2d at 957–58. Plus courts in Tennessee do not favor conditions precedent. *Harlan*, 796 S.W.2d at 958; *Koch*, 924 S.W.2d at 71. The Court therefore finds that Plaintiff did not need to participate in appraisal before suing Defendant.

But does Plaintiff need to participate in appraisal anyway? The answer is yes. The Policy's appraisal provision is valid, the parties disagree about the loss vehicle's actual cash value, and Defendant requested appraisal in writing. As a result, the contract requires the parties to participate in appraisal. *See Bryant*, 2021 WL 711495, at *7 (interpreting same appraisal provision and finding "now that State Farm has invoked the appraisal process, Plaintiff is required under the policy to participate in that process"); *see also Bobel v. Safeco Ins. Co. of Ind.*, No. 18CV245, 2018 WL 11198837, at *1–2 (N.D. Ohio May 10, 2018). Indeed, "proceeding with the appraisal process is not only consistent with the terms of the Policy, but it will potentially save both party resources and judicial resources." *Glob. Aerospace, Inc.*, 2015 WL 5514627, at *2.

To sum up, the Policy does not make appraisal a condition precedent to suit. That said, the Policy does require the parties to participate in appraisal once a party invokes it in writing. As a result, the Court **GRANTS** Defendant's motion to compel appraisal.

The next question for the Court is whether it should dismiss Plaintiff's claims, stay the case pending appraisal, or allow both this suit and appraisal to proceed at the same time. That all depends on whether Plaintiff has standing to sue, even though she has not completed appraisal. The Court begins there.

## IV.    Plaintiff's Standing

### A.    Legal Requirements for Standing

To show standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff bears the burden of proving these elements. *Id.*

For an injury in fact, the plaintiff "must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotations omitted). A particularized injury affects the plaintiff in a personal, individual way. *Id.* And an injury is concrete if it is a real injury, not just an abstract one. *Id.* at 1548–49; *see also Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019).

And to establish causation, "a plaintiff must show a 'causal connection between the injury and the conduct complained of,' or, in other words, that the injury alleged is 'fairly . . . trace[able] to the challenged action of the defendant.'" *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). In fact, the plaintiff must show "personal injury fairly traceable to the defendant's allegedly unlawful conduct." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

What is more, at the summary judgment stage, to show standing, a plaintiff "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken as true." *Lujan*, 504 U.S. at 561 (internal quotations omitted).  "Plaintiffs must be able to show at least the existence of a genuine issue of material fact as to the elements of standing if their claims are to survive." *Exec. Transp. Sys. LLC v. Louisville Reg'l Airport Auth.*, 678 F. Supp. 2d 498, 505 (W.D. Ky. 2010).

### B.    Analysis of Plaintiff's Standing

Plaintiff's standing turns on the first two elements—injury in fact and causation. Defendant argues that, because Plaintiff "has not complied with the appraisal remedy, Plaintiff cannot show that she has suffered a concrete or actual injury-in-fact; she only alleges one that is conjectural or hypothetical."  (ECF No. 68-2 at PageID 685.)  This is partly because "[a]ppraisal may reveal that State Farm paid *more* than the actual cash value of Ms. Clippinger's total loss vehicle."  (*Id.*)  So Defendant argues that Plaintiff has suffered no injury unless the appraisal process shows that Defendant paid less than the vehicle's actual cash value.

### i.    Plaintiff's Injury from Defendant's Breach of Contract and Breach of Good Faith and Fair Dealing

The Court looks first at whether Plaintiff has standing to bring her contract claims.  *See Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015) ("A plaintiff must have standing for each claim pursued in federal court.").  As proof of injury, Plaintiff attaches two expert reports explaining how Defendant's valuation methods improperly calculate the actual

cash value of loss vehicles.[8]  (ECF Nos. 93 at PageID 1162; 91-1; 92.)  For instance, the Chuck Eldridge Report says that it is against industry practice to apply a negotiation adjustment to used vehicles during the valuation process.  (ECF No. 91-1.)  Eldridge states that "[n]egotiating prices for used automobiles is no longer a common or accepted industry practice.  Any discounts are applied and incorporated into the market value price, which is the price provided in online advertisements."  (*Id.* at PageID 1082.)  Eldridge also reviewed the valuation report for Plaintiff's vehicle.  He found that "[e]ach of the comparable vehicles listed in the report was advertised online by a dealership that prices its inventory to market and would not typically negotiate a discount from the advertised price."  (*Id.* at PageID 1084.)

And the Bent Report supports these assertions.  (*See* ECF No. 92.)  As Bent explains, the appraisal industry does not use typical negotiation adjustments when valuing total loss vehicles, because "the [Uniform Standards of Professional Appraisal Practice] standards do not permit arbitrarily deducting the advertised price of the vehicle based on projections of what that vehicle might ultimately sell for."  (*Id*. at PageID 1137.)  Because of the lack of hard data in the used car industry and the many variables that go into valuing a car, Bent asserts that it is "improper for appraisers to deviate from the observable and verifiable data and assume [the comparable vehicles] would sell for a price lower than the advertised price."  (*Id*. at PageID 1137–38.)  He adds that, in Plaintiff's case, Defendant "deviate[d] from the [comparable] methodology by applying an assumption that the advertised price of each comparable vehicle should be discounted for 'typical negotiation.'"  (*Id.* at PageID 1138.)

---

[8] Defendant argues that the expert reports are not relevant to its motion for summary judgment. (*See, e.g.*, ECF No. 96 at PageID 1200.)  But because the Court finds the reports relevant evidence about Plaintiff's standing, the Court considers them here.

Next, as an experienced auto-appraiser, Bent calculates the injury that Defendant caused by applying a typical negotiation adjustment in its valuation of Plaintiff's vehicle. (*See id.*) He found that, by applying the negotiation adjustment, Defendant "reduced the market value of Plaintiff's loss vehicle by $849.50." (*Id.*) And so, including taxes, Bent claims that Defendant would have paid Plaintiff $913.64 more for her total loss if it had followed industry valuation standards. (*Id.*)

Plaintiff therefore argues that she "has standing because she has undisputed proof that State Farm has undervalued her vehicle by improperly applying a 'Typical Negotiation' adjustment contrary to appraisal standards and contrary to market conditions." (ECF No. 93 at PageID 1160–61.) To be sure, at a minimum, this evidence creates a genuine factual dispute about whether Defendant's use of the typical negotiation adjustment injured Plaintiff. But does this evidence alone show that Plaintiff has standing to bring her contract claims? It does not.

To determine standing, this Court must ask whether Plaintiff has shown an injury "fairly traceable to the defendant's allegedly unlawful conduct." *California*, 141 S. Ct. at 2113. Here Defendant's allegedly unlawful conduct is its breach of contract and of the covenant of good faith and fair dealing. (ECF No. 1-1 at PageID 23–25.) This means that Plaintiff's injury must be fairly traceable to Defendant's breach of contract.[9] And, without an appraisal, Plaintiff can only speculate about whether Defendant's breach injured her.

To explain, in order to establish an injury resulting from Defendant's breach, Plaintiff must show that Defendant failed to pay her the loss vehicle's actual cash value. Now that

---

[9] "[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim." *Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) (quoting *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009)).

Defendant has invoked the appraisal provision, the contract requires the parties to employ appraisal to determine the actual cash value of her vehicle. (*See* ECF No. 68-5 at PageID 757). As a result, despite the negotiation deduction from the Audatex report, until appraisal is complete, the parties still can only speculate about whether (1) Defendant failed to pay Plaintiff the actual cash value of her vehicle, (2) Defendant breached the contract, or (3) Defendant's breach injured Plaintiff.

That does not end this Court's inquiry, though. Plaintiff also brings a declaratory judgment claim. And as explained below, the Court finds that she has standing to bring that claim.

### ii.    Plaintiff's Declaratory Judgment Claim

Plaintiff alleges that the negotiation adjustment violates Tenn. Comp. R. & Regs. 0780-01-05-.09(c) because it is "(a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not specific or appropriate as to dollar amount...". (*See* ECF No. 1-1 at PageID 23–24.) Under that regulation, "[a]ny deductions from the cost [of settlement], including deduction for salvage, must be as specific as reasonably possible, and specific and appropriate as to dollar amount, and shall be documented in the claim file[.]" Tenn. Comp. R. & Regs. 0780-01-05-.09(c). So she seeks a declaratory judgment that Defendant's actions breached its insurance contracts and violated Tennessee law, as well as an order enjoining Defendant "from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Adjustments." (ECF No. 1-1 at PageID 27.)

"To issue a declaratory judgment, the Court must be faced with 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'"

*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 465 F. Supp. 2d 827, 831 (N.D. Ohio Dec. 13,

2006) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  This means

that the controversy "must be such that it can presently be litigated and decided and not

hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may

never develop."  *Hillard v. First Fin. Ins. Co.*, No. 91-6238, 1992 WL 164998, at *2 (6th Cir.

1992).

    For starters, the Court, not an appraiser, determines whether, by using the negotiation

adjustment, Defendant violated state law.  *See Thomas v. Standard Fire Ins. Co.*, No. E2015-

01224-COA-R3-CV, 2016 WL 638559, at *3 (Tenn. Ct. App. Feb. 17, 2016) (appraisers' "scope

of authority is strictly defined by the contract or other agreement of the parties"); *Merrimack*

*Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 152–53 (Tenn. Ct. App. 2001) (finding that

appraisers have authority to determine issues agreed to under the insurance policy).  Plus the

Policy here says "appraisers shall only determine the actual cash value of the ***covered vehicle***.

Appraisers shall have no authority to decide any other questions of fact, decide any questions of

law, or conduct appraisal on a class-wide or class-representative basis."  (ECF No. 68-5 at

PageID 758.)

    With that in mind, the Court finds that Plaintiff has shown "at least the existence a

genuine issue of material fact as to the elements of standing" for her declaratory judgment claim.

*Exec. Transp. Sys. LLC*, 678 F. Supp. 2d at 505.  There is substantial evidence that (1) Defendant

applies a typical negotiation adjustment to the comparable vehicles it uses to determine a total

loss vehicle's actual cash value (*see* ECF No. 68-3), (2) Defendant applies the adjustment

without documentation or explanation (*see id.*), and (3) this typical negotiation adjustment

injures Tennessee insureds (ECF Nos. 91-1 & 92).  So the Court finds that Plaintiff has shown a concrete, actual injury traceable to Defendant's valuation methods.  *See Spokeo, Inc.*, 136 S. Ct. at 1547.

What is more, a declaratory judgment in Plaintiff's favor will partially redress the injury, because it will prevent Defendant from violating this regulation and harming class members.  *See Parsons*, 801 F.3d at 716 (finding that partial redress can satisfy standing requirement and that a declaration on the constitutionality of a certain act "would likely combat at least some future risk" that the plaintiffs would suffer future harm); *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 971 (6th Cir. 2009) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)); *c.f. Friends of the Earth, Inc., v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185–86 (2000) ("It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress.")

Finally, "[i]n the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing.  The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm."  *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006).  Plaintiff has shown that Defendant applied a typical negotiation adjustment during the valuation of her total loss vehicle.  (*See* ECF No. 68-3.)  Defendant itself estimates that it used a typical negotiation adjustment in the total loss valuations of over 60,000 Tennessee insureds. (ECF No. 1 at PageID 6; *see also* ECF No. 1-3.)  What is more, Plaintiff has alleged that this

harm is ongoing.[10]  (ECF No. 1-1 at PageID 26.)  And there is no evidence that Defendant has

stopped applying the typical negotiation adjustment in its valuations.  As a result, the Court finds

that Plaintiff has shown a concrete and present harm resulting from Defendant's use of a

negotiation adjustment.  So Plaintiff raises a genuine issue of material fact about her standing

here.

Decisions from other courts considering similar issues also offer guidance.  The facts

here are like those in *Ngethpharat v. State Farm Automobile Insurance Co.*  499 F. Supp. 3d 908

(W.D. Wash. 2020).  Like Plaintiff here, the plaintiffs in *Ngethpharat* alleged that State Farm

applied a typical negotiation adjustment when determining the cash settlement value for their

total loss vehicles.  *Id.* at 912.  Though the court did not address standing, it denied Defendant's

motion to compel appraisal.  *Id.* at 919.  The court found that the plaintiffs need not go to

appraisal, because they did not challenge the amount of the deduction—instead, they challenged

"its legality."  *Id.*  As a result, "[o]rdering an appraisal to determine the correct 'negotiation

discount' would not resolve the underlying dispute as to whether any such discount is

permissible" under state law.  *Id.*

This Court finds the reasoning in *Ngethpharat* sound.  Appraisal here will not show

whether Defendant violated the Policy or Tennessee law by applying an unexplained, arbitrary

negotiation adjustment.  Instead, that is a question for the Court to decide.  *Id.*; *see also Klein v.*

*Secure Ins. Co.*, No. 14-cv-12616, 2014 WL 12659923, at *4–5 (E.D. Mich. Nov. 4, 2014)

(finding that whether calculating "actual cash value" includes sales tax under the contract is a

---

[10] The Court notes also that—at Defendant's request and over Plaintiff's objection—it stayed
class discovery pending the Court's decision on this motion for summary judgment.  (*See* ECF
Nos. 70, 85 & 90.)  Because the Court stayed discovery, Plaintiff has not yet sought evidence
about the full extent of the class's injury.

question for the court, not appraisers); *Davis v. GEICO Cas. Co.*, No. 2:19-cv-2477, 2020 WL 68573, at *4 (S.D. Ohio Jan. 7, 2020) ("Appraisers are limited to making factual determinations regarding the amount of damages [a] vehicle has incurred. It is not their responsibility to interpret policy language.").[11]

In any event, Plaintiff has requested a declaratory judgment that Defendant's valuation methods violated the Policy and Tennessee law. And she has shown that an actual controversy exists about whether Defendant's unexplained application of a typical negotiation adjustment violated this state regulation. So no matter what happens with the appraisal, Plaintiff's declaratory judgment action is ready to proceed.

In sum, the contract requires Plaintiff to participate in appraisal under the Policy. And it is not yet clear whether Plaintiff has standing to bring her contract claims. She does, however, have standing to bring her declaratory judgment claim now. The Court therefore **DENIES** Defendant's motion for summary judgment but **GRANTS** the motion to compel appraisal.

---

[11] To support its claim that Plaintiff cannot prove damages until after appraisal, Defendant cites *Bryant v. State Farm Mutual Automobile Insurance Co.*, a California district court case. (ECF Nos. 68-2 at PageID 687; 95 at PageID 1194–95). In *Bryant*, the district court considered the same appraisal provision that is currently before this Court. It found that the plaintiff could not establish an injury or damages without participating in appraisal first. 2021 WL 711495, at *7. To make this finding, the court relied on two other federal cases, *Garner v. State Farm Mutual Automobile Insurance Co.*, No. 08-1365, 2008 WL 2620900, at *7 (N.D. Cal. June 30, 2008), and *Enger v. Allstate Insurance Co.*, 407 F. App'x 191, 193 (9th Cir. 2010). But the California Court of Appeals has found that the reasoning used by the courts in *Garner* and *Enger* does not apply when the plaintiff seeks a declaratory judgment. *See Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 122 Cal. Rptr. 3d 480, 489 (Cal. Ct. App. 2011). The court in *Kirkwood* found that, "[n]otwithstanding that the parties do dispute the actual cash value of the subject property, an actual controversy exists between [the parties] about the proper interpretation of [state law] within the context of adjusting a property loss claim, thus entitling [the respondent] to declaratory relief." *Id.* And "[o]nly the court, not an appraiser, can deliver declaratory relief as to the proper meaning of [state law] within the context of [the appellant's] insurance adjusting practices." *Id.* And so, this Court does not rely on the *Bryant* opinion on this point.

V.      **Compelling Appraisal and Staying the Case**

If the Court does not grant summary judgment in its favor, Defendant asks that the Court compel appraisal and stay the case instead.  (ECF No. 68-2 at PageID 691.)  This approach makes sense.

This is because the parties will have a better idea of the relevant issues after appraisal. For one thing, appraisal will clarify whether Plaintiff has standing for her contract claims.  And although this Court finds that Plaintiff has standing to bring her declaratory judgment action, the declaration that Plaintiff overlaps with the question to whether Defendant breached the Policy.[12] Because Plaintiff's declaratory judgment action and her breach of contract claim concern related issues, the Court finds it appropriate to stay this action while the parties participate in appraisal. Both parties and the Court will better understand the issues here at that time.

<u>CONCLUSION</u>

The Court finds that the parties agreed to a valid appraisal provision.  Although appraisal is not a condition precedent to suit, the parties must participate in appraisal now that Defendant has invoked the provision.  What is more, Plaintiff has standing to bring her declaratory judgment action.  But until the parties participate in appraisal, it is not clear that she suffered any injury from Defendant's alleged breach of contract.  With all this mind, the Court **DENIES** Defendant's motion for summary judgment but **GRANTS** its motion to compel appraisal and stay the case.

---

[12] Indeed, Plaintiff asks for a declaration "that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with State Farm, as well as a violation of Tennessee law, for State Farm to base the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Adjustments."  (ECF No. 1-1 at PageID 27.)

**SO ORDERED**, this 19th day of October, 2021.

s/Thomas L. Parker
_____
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE